UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ALI ANVARI MAJD<br>SSN: XXX-XX-5351 | ) | Bankruptcy No. 12-15764-HRT<br>Chapter 7 |
| | ) | |
| Debtor. | ) | |
| ______________________________ | ) | |
| | ) | |
| SAEED FAKHIMALIZAD and<br>MILE HIGH AUTOMOBILES, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | Adversary Proceeding No. 13- __________ |
| | ) | |
| v. | ) | |
| | ) | |
| ALI ANVARI MAJD | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF INDEBTEDNESS PURSUANT TO 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6)**

Saeed Fakhimalizad ("Fakhimalizad') and Mile High Automobiles, LLC ("Mile High") (Fakhimalizad and Mile High are collectively referred to herein as "Plaintiffs", by and through its undersigned counsel, Kutner Miller Brinen, P.C., states their Complaint Objecting to Dischargeability of Indebtedness against Ali Anvari Majd (the "Debtor") as follows:

**<u>JURISDICTION AND VENUE</u>**

1. This Adversary Proceeding is commenced pursuant to Bankruptcy Rule 7001 *et seq.* of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Section 523(a) of Title 11 of the United States Code ("Bankruptcy Code").

2. This Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 1331 and 1334(b) and (e) because this proceeding arises out of the Bankruptcy Code and arises in and is related to the Chapter 7 case filed by the Debtor.

3. This is a core proceeding as defined under 28 U.S.C. § 157(b)(2)(I) as it concerns a determination of the dischargeability of particular debts.

4. Venue in this case is proper pursuant to 28 U.S.C. § 1409.

5. This is an adversary proceeding to determine the dischargeability of a debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

## PARTIES

6. Fakhimalizad is an individual residing in Adams County, Colorado.

7. Mile High is a Colorado limited liability company in good standing whose principal place of business is 2691 W. 134th Circle, Broomfield, CO 80020.

8. Fakhimalizad is the sole manager and member of Mile High.

9. Debtor is an individual residing in Broomfield County Colorado.

## BACKGROUND

10. The Debtor filed a voluntary petition for relief under Chapter 7 of the bankruptcy code on March 27, 2012 (the "Petition Date").

11. Plaintiffs have been granted extensions of time to and including April 29, 2013 to file a complaint objecting to Debtor's discharge and/or determining the dischargeability of the debts owed by Debtor to Plaintiffs.

12. Debtor's schedules list Fakhimalizad as an unsecured creditor owed $443,000.00 pursuant to a judgment.

13. In fact, Fakimalizad is an unsecured creditor of Debtor in the principal amount of $410.952.07 plus interest based on a two judgments entered on March 6, 2012: a judgment against Debtor in the amount of $393,725.15 and a judgment entered against Debtor and a corporation, Elite Auto Service Center, Inc., jointly and severally, in the amount of $17,226.92.

14. Debtor's schedules do not list Mile High as a creditor of debtor.

15. In fact, Mile High is an unsecured creditor of Debtor in the principal amount of $42,075.00 plus interest based on a judgment entered on March 6, 2012 against Debtor and a corporation, Elite Auto Sports, Inc., jointly and severally, in the amount of $42,075.00.

## GENERAL ALLEGATIONS

16. Elite Auto Sports, Inc. ("EA Sports") is a delinquent and defunct Colorado corporation whose principal place of business was located in Broomfield, CO 80020. At all times material hereto, Debtor was an officer director and authorized agent of EA Sports.

17. Elite Auto Service Center, Inc. ("EA Service") is a delinquent and defunct Colorado corporation whose principal place of business was located in Broomfield, CO 80020. At all times material hereto, Debtor was an officer director and authorized agent of EA Service.

18. Fakhimalizad and Debtor met because of their associations within the Persian community in the Denver area.

19. Debtor sought to develop a relationship with Fakhimalizad based on their common heritage including engaging in and arranging joint activities of their family members, their joint participation in numerous social gatherings and lengthy conversations about their interests. As a result, Fakhimalizad and Debtor became very close friends and confidants.

20. Debtor encouraged Fakhimalizad to become interested in and, eventually, to participate in the automobile business by disclosing his participation in/ownership of several automotive businesses and their financial success and expansion.

21. Based on the encouragement and representations of Debtor, Fakhimalizad formed Mile High with the intent to buy and sell selected automobiles for a profit.

22. Beginning prior to November, 2005, Debtor Majd sought to develop a relationship of trust with Fakhimalizad and convinced Fakhimalizad that Debtor was a responsible, trustworthy and successful businessman with interests in a variety of ventures, including without limitation, Elite Auto Service and Auto Body, Inc., EA Service, EA Sports and real estate developments in Dubai.

23. Commencing in November, 2005 and continuing through January, 2008, Debtor sought loans from Fakhimalizad, falsely representing to Fakhimalizad that the loaned funds would be used in Debtor's several business ventures and investments and would be repaid to Fakhimalizad with interest.

24. In reliance on those representations and their relationship of trust, confidence, loyalty, and good faith, Fakhimalizad loaned money to Defendant Majd on several occasions and in the total amount of $299,400.00.

25. On numerous occasions when Fakhimalizad sought repayment of said funds, Debtor falsely represented to Fakhimalizad that the money had been invested in and was tied up in Debtor's overseas business ventures and his local automobile ventures and would be repaid from distributions to him from such ventures.

26. The representations made by Debtor to obtain said funds and to extend the time of repayment were knowingly false and made with the intent that Fakhimalizad would rely on them.

27. Fakhimalizad justifiably relied on those representations and was damaged when those sums were not repaid.

28. In March 2012, Debtor confessed judgment in favor of Fakhimalizad for said loaned funds plus interest in the amount of $393,725.15.

29. In May 2006 and again in June 2006, Debtor represented to Fakhimalizad that Debtor's automobile service business, EA Service, was experiencing temporary financial difficulties as a result in delays in payment from national auto rental companies, which prevented Debtor and EA Service from acquiring parts needed to complete pending repair jobs. Debtor requested that Fakhimalizad advance funds to him and/or EA Service to acquire those parts. Debtor promised that he and EA Service would repay the amount of such advances upon collection of EA Service's receivables.

30. Those representations by Debtor were false and were made with intent to deceive Fakhimalizad.

31. In reliance on Debtor's representations and their relationship of trust, confidence, loyalty, and good faith, Fakhimalizad allowed Debtor and EA Service to charge $11,030.98 on Fakhimalizad's Bellco Credit Union Visa account to pay for parts purchased from NAPA Auto Parts.

32. Fakhimalizad justifiably relied on those representations and was damaged when those sums were not repaid.

33. In March 2012, Debtor confessed judgment in favor of Fakhimalizad for the amounts charged on Fakhimalizad's credit card plus interest in the amount of in the amount of $17,226.92.

34. In the fall of 2010, Debtor offered to help Fakhimalizad in the new automobile trading business of Mile High by locating vehicles which EA Sports could acquire for Mile High on favorable, below market terms.

35. Debtor sent to Mile High information and photographs concerning two vehicles, a 2010 Cadillac Escalate ESV Platinum AWD, with less than 10,000 miles; and a 2010 BMW X5 x Drive 48i AWD, with less than 10,000 miles.

36. Debtor represented to Mile High that EA Sports owned or had legal rights to acquire said vehicles for a purchase price of $52,000.00, that said vehicles has a much higher market value because of their condition and could be resold for a much greater price than Mile High would pay EA Sports for them.

37. On November 12, 2010, in reasonable reliance on Debtor's representations, Mile High entered into a contract to purchase the following vehicles from EA Sports for the total amount of $52,000 on the following terms: (a) Mile High would make a down payment of $38,000.00 to EA Sports; (b) EA Sports would deliver the above described and specifically identified vehicles to Mile High with free and clear titles within 30 days from November 12, 2010; and (c) Mile High would pay the remaining balance of $14,000 to EA Sports at the time

of the delivery of the vehicles in question to complete the transaction.

38. On November 12, 2010, Mile High paid the down payment in the amount of $38,000 to EA Sports.

39. Those representations by the Debtor were false and were made with intent to deceive Mile High.

40. Despite demands, Debtor and EA Sports failed and refused to deliver physical possession of and title to the two vehicles. Rather, Debtor retained the funds.

41. Mile High has been damaged in the amount of the $38,000.00 down payment made to EA Sports.

42. In March 2012, Debtor confessed judgment in favor of Mile High for said down payment plus interest in the amount of in the amount of $42,075.00.

**FIRST CLAIM FOR RELIEF**
**(Nondischargeability of Judgment in Favor of Plaintiff Fakhimalizad**
**Under 11 U.S.C. § 523(a)(2)(A)**

43. Fakhimalizad incorporates by reference paragraphs 1 through 42 above as if fully set forth herein.

44. The amounts owed by the Debtor to Fakhimalizad, which were reduced to judgments in favor of Fakhimalizad for $393,725.15 and for $17,226.92 ("collectively, the "Fakhimalizad Judgment Debt") are debts of the Debtor to Fakhimalizad for money, property, services, or an extension, renewal or refinancing of credit.

45. The Fakhimalizad Judgment Debt was obtained by false pretenses, a false representation, or actual fraud.

46. The Fakhimalizad Judgment Debt owed by the Debtor to Fakhimalizad is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, Plaintiff Fakhimalizad prays for relief as set forth below.

**SECOND CLAIM FOR RELIEF**
**(Nondischargeability of Judgment in Favor of Plaintiff Fakhimalizad**
**Under 11 U.S.C. § 523(a)(4)**

47. Fakhimalizad incorporates by reference paragraphs 1 through 46 above as if fully set forth herein.

48. The Fakhimalizad Judgment Debt was obtained by Debtor while acting in a

fiduciary capacity.

49. The Fakhimalizad Judgment Debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, Plaintiff Fakhimalizad prays for relief as set forth below.

**THIRD CLAIM FOR RELIEF**
**(Nondischargeability of Judgment in Favor of Plaintiff Fakhimalizad Under 11 U.S.C. § 523(a)(6))**

50. Fakhimalizad incorporates by reference paragraphs 1 through 49 above as if fully set forth herein.

51. The Fakhimalizad Judgment Debt arose as a result of the Debtor's intent to injure and damage Fakhimalizad by willful and malicious conduct.

52. The Fakhimalizad Judgment Debt owed the Debtor to Fakhimalizad is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, Plaintiff Fakhimalizad prays for relief as set forth below.

**FOURTH CLAIM FOR RELIEF**
**(Nondischargeability of Judgment in Favor of Plaintiff Mile High Under 11 U.S.C. § 523(a)(2)(A)**

53. Mile High incorporates by reference paragraphs 1 through 52 above as if fully set forth herein.

54. The judgment against the Debtor in favor of Mile High for $42,075.00 (the "Mile High Judgment Debt") is a debt for money due and owing.

55. The Mile High Judgment Debt was obtained by false pretenses, a false representation, or actual fraud.

56. The Mile High Judgment Debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, Plaintiff Mile High prays for relief as set forth below.

**FIFTH CLAIM FOR RELIEF**
**(Nondischargeability of Judgment in Favor of Plaintiff Mile High Under 11 U.S.C. § 523(a)(4))**

57. Mile High incorporates by reference paragraphs 1 through 56 above as if fully set forth herein.

58. The Mile High Judgment Debt was for money obtained by Debtor from Mile High while

acting in a fiduciary capacity.

59. The Mile High Judgment Debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, Plaintiff Mile High prays for relief as set forth below.

**SIXTH CLAIM FOR RELIEF**
**(Nondischargeability of Judgment in Favor of Plaintiff Mile High**
**Under 11 U.S.C. § 523(a)(6))**

60. Mile High Fakhimalizad incorporates by reference paragraphs 1 through 59 above as if fully set forth herein.

61. The Mile High Judgment Debt arose as a result of the Debtor's intent to injure and damage Mile High by willful and malicious conduct.

62. The Mile High Judgment Debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, Plaintiff Mile High prays for relief as set forth below.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs Saeed Fakhimalizad and Mile High pray that the Court: 1) Determine that the Debtor's judgment debts to Fakhimalizad in the sums of $393,725.15 and for $17,226.92 are nondischargeable pursuant to 11 U.S.C. §§523(a)(2)(A), 523(a)(4) and/or 523(a)(6); 2) Determine that the Debtor's judgment debt to Mile High in the sum of $42,075.00 is nondischargeable pursuant to 11 U.S.C. §§523(a)(2)(A), 523(a)(4), and/or 523(a)(6); and 3) Grant such additional relief as to the Court appears proper, and

Dated: April 29, 2013

Respectfully submitted,

By: ______________________________

Jeffrey S. Brinen, #20565
**KUTNER MILLER BRINEN, P.C.**
303 East 17th Avenue, Suite 500
Denver, Colorado 80203-1235
Telephone: 303-832-2400
Facsimile: 303-832-1510
E-mail: jsb@kutnerlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 29, 2013, a copy of the **COMPLAINT TO DETERMINE DISCHARGEABOLITY OF INDEBTEDNESS and SUMMONS** was served by U.S. Regular Mail in accordance with FED. R. BANKR. P. 2002 and 11 U.S.C. § 342(c), (if applicable), on the following interested parties at the addresses below:

Ali Anvari Majd
11150 Prairie Place
Broomfield, CO 80023

John W. Tinder, Esq.
11971 Quay St.
Broomfield, CO 80020

*s/ Angela R. Upton*
Angela R. Upton